Thomas W. McNamara
info@regulatoryresolutions.com
Regulatory Resolutions
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile: 619-269-0401

*Court-Appointed Receiver*

Andrew W. Robertson (SBN 62541)
arobertson@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile: 619-269-0401

*Attorneys for Receiver*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PLCMGMT LLC, dba PROMETHEUS LAW, JAMES A. CATIPAY, and DAVID A. ALDRICH,<br><br>　　　　Defendants. | Case No. 2:16-cv-02594-TJH (FFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF PROCEDURES FOR FINAL DETERMINATION OF INVESTOR CLAIMS AND FIRST INTERIM DISTRIBUTION TO INVESTORS**<br><br>Judge:　Hon. Terry J. Hatter, Jr.<br>Ctrm.:　9B<br>Date:　UNDER SUBMISSION<br>Time:　UNDER SUBMISSION |

## I. Introduction

Thomas W. McNamara, as the Court-appointed Receiver of Defendant PLCMGMT LLC, dba Prometheus Law ("Receiver"),[1] seeks the Court's approval of "Procedures for the Receiver's Final Determination of Investor Claims and Pro Rata Distributions to Investors with Approved Claims," attached as Exhibit A ("Claims Procedures"), and approval to make a first interim distribution to investors with approved claims, pro rata, totaling $1,056,435.

The Receiver had previously deferred confirmation of a claims procedure and approval of a first interim distribution as the funds available for a distribution were not adequate relative to the administrative expenses required. In the Third Status Report filed August 29, 2017 (ECF No. 99), the Receiver indicated that funds from the potential sale of the Flower Street Condo, combined with other current assets, should generate enough funds to commence interim distributions.

The sale of the Flower Street Condo was approved by the Court on November 13, 2017 (ECF No. 105) and completed on November 21, 2017 with net proceeds to the receivership of $968,993.13. As such, the receivership may now proceed with a first interim distribution and a final determination of investor claims.

## II. The Claims Universe

From the outset of the receivership, the Receiver has maintained an investor database derived from our comprehensive review of the internal records of PLCMGMT LLC, dba Prometheus Law ("Prometheus") and on-going communications with investors. In December 2016, the Receiver launched a mass mailing (by U.S. Mail and email) to all identified investors which provided each investor a report of what the receivership records indicate had been invested in Prometheus. We asked any investor who disputed the reported amount to contact

---

[1] Mr. McNamara was appointed Receiver by the Preliminary Injunction entered April 26, 2016 (ECF No. 20).

us immediately. The responses were sparse and any corrections were *de minimus*, most relating to details of IRA accounts. We have also regularly updated our records to reflect address changes as we have received them.

Through this process, the Receiver has identified the universe of investor victims to be 251 investors (122 of whom invested through IRA accounts) with net losses of $11.7 million.[2] Given the advanced state of this database, the Claims Procedures described herein will primarily serve to confirm that universe of investors and provide a final opportunity for those investors to identify any possible omissions or errors and/or to update their contact information as necessary.

### III. The Proposed Procedures

The Claims Procedures set forth in Exhibit A have four basic components, which can be summarized as follows:

    **A.** **Notice.** The Receiver shall provide notice to investors by posting a Notice on the Receiver's website, along with copies of the Claims Procedures and the Court's Order. The same Notice shall also be sent to investors by U.S. Mail and email.

    **B.** **Preliminary Schedule.** The Receiver shall immediately post on the Receiver's website the Preliminary Schedule of Approved Claims based on the Receiver's detailed database and calculated on the investor's net stripped capital (cash in less cash out). Any investor who disputes the indicated amount of their investment may object in writing to the Receiver.

///

///

---

[2] These conclusions were reported in detail in our Second Status Report (filed April 3, 2017, ECF No. 80) and have been the basis for the disgorgement amounts ordered against James Catipay and David Aldrich.

**C.    Final Schedule.**  The Receiver will investigate and resolve any objections and then file with the Court and post on the Receiver's website a Final Schedule.  All decisions of the Receiver are final.

**D.**    After posting the Final Schedule, the Receiver is authorized to make an initial pro rata distribution, on a pro rata basis, to investors in the total amount of $1,056,435.  The Receiver is authorized to make additional pro rata distributions in the future in such amounts and at such times as the Receiver deems appropriate.

Specific deadlines and time frames are set forth in detail in the Claims Procedures.

### IV.    Pro Rata Distributions are Consistent with Ninth Circuit Law

The Claims Procedures provide that the amount of each investor's approved claim shall be calculated based solely on the investor's "net stripped capital" which is defined as funds invested in Prometheus by or for the benefit of an investor less funds distributed by Prometheus to or for the benefit of that investor.  The claim shall not include any provision for lost or reduced account values or any specified rate of return promised by Defendants.

The Claims Procedures further provide that distributions to investors shall be pro rata, meaning that each investor's interim distribution shall be the same percentage of their approved claim.

These procedures are consistent with the oft-recited principle that defrauded investors in a Ponzi scheme case should receive ratable distributions from receivership funds.  *See Donell v. Kowell*, 533 F.3d 762, 776 (9th Cir. 2008) ("[C]ourts have long held that [it] is more equitable to attempt to distribute all recoverable assets among the defrauded investors who did not recover their initial investments rather than to allow the losses to rest where they fell." (citation omitted)); *see also United States v. Real Property Located at 13328 & 13324 State Highway 75 N.*, 89 F.3d 551, 553 (9th Cir. 1996) ("[T]he equities demand[] that all

victims of the fraud be treated equally." (citation omitted)); *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115-16 (9th Cir. 1999) (affirming approval of receiver's pro rata distribution plan); *Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d 735, 749 (2d Cir. 2013) ("A district court assessing a receiver's plan for compensation of victims of a fraudulent scheme has equitable authority to treat all the fraud victims alike (in proportion to their investments) and order a pro rata distribution." (citation, alteration, and internal quotation marks omitted)).

## V.     Proposed First Interim Distribution

The Receiver seeks approval to make a first interim distribution in the total amount of $1,056,435 to be made on a pro rata basis. Since the $1,056,435 to be distributed represents 9% of the total losses of $11,738,168, each investor shall receive a distribution equal to 9% of their approved claim. For example, a $100,000 investor will receive $9,000 and a $10,000 investor will receive $900.

Exhibit B is a Receipts and Disbursements Summary for the receivership through December 1, 2017. It indicates current cash of $1,312,619.53. After an interim distribution of $1,056,435, net cash will be $256,184, an appropriate reserve for on-going litigation and other costs.

The timing and amount of future distributions will depend on whether, and to what extent, the receivership accumulates additional assets.

As indicated in the Third Status Report of August 29, 2017 (ECF No. 99), the most promising "asset" of the receivership remains the potential fee sharing revenue from the Case Portfolio. To date, the receivership has received $179,470 in such fees. More than 95% of the cases relate to the drug Risperdal and, to date, there have been no settlements or verdicts in any of those cases and we have no current projections as to the timing and potential amount of future fee revenues from those cases.

///

The Receiver requests that the Court approve the submitted Claims Procedures, approve a first interim pro rata distribution totaling $1,056,435, and enter an order in the form of the Proposed Order submitted herewith.

Respectfully submitted,

Dated: December 12, 2017   MCNAMARA SMITH LLP

By: /s/ Andrew W. Robertson
Andrew W. Robertson
Attorneys for the Receiver